Thank you. Good morning, Your Honors, and may it please the Court. I'm Maurice Harmon, on behalf of the Plaintiff-in-Floor Accord and the Appellant here, DRK. This is a case about a serial copyright infringer that is asking you, as the panel, to help and escape liability with respect to nearly a thousand copyright infringement claims that have been asserted here. I say serial, I'm not... I appreciate that alcohol also works because it affects... It's the one thing I did not see an answer to in the record. I understand that these are non-exclusive... The ones they're talking about are non-exclusive licenses in the sense that the photos can be licensed by other people. That's right. The photographer can authorize other people to license them as well as DRK. Is that right? Correct. But once they're licensed... This is what I couldn't quite get. If it's licensed, this is McGraw-Hill saying, can McGraw-Hill then go get a different license for a different 20,000 volumes from a different agent or company? Or once it's licensed, are they restricted to fulfilling that license? Well, I think that they could go get another license for additional use from somebody, not DRK, but they never did it. And what they did here is they got a license to copy or reproduce images for 40,000 copies, 100,000 copies, and then blew right past that limit and kept using the photographs over and over and over beyond the limits. And it's fundamental law now since New Kids on the Block, which is the most quoted case, said that once you become, once you infringe copyright or go beyond the license limits, you become a stranger, as a stranger, to the license holder. I'm sorry? Well, we're here. Well, we would argue that the actual owner includes DRK, but also includes the photographer and, after Menden V. Wiley, anyone that gets, any entity that gets a right to authorize others, as exists here without question, and I think it would be conceded by McGraw, once that ownership interest attaches, then co-owners can bring the claims. That's the big difference after the 76 Act. And why is agreement with the photographer, the owner of these images, include that right? The right to authorize is implied in their understanding. It's not an overly sophisticated agreement, the representation agreements in this case. They're not as carefully drawn as Menden, the Menden-Wiley case, decided about a year and a half ago. What definition of error agreement is with the actual owner of the right to authorize the status? It's the part that says, I'm giving you photographs that you are going to sell or lease, and in this case, it's leasing. And the way it worked, as McGraw, I think, will concede, is that the photographs would generally, if not almost always, be licensed for non-exclusive purposes. So they could license, so DRK would license on behalf of the photographer an image to McGraw Hill. They might also license the very same image to Houghton Mifflin. But ownership before the 76 Act was singular. Now the biggest change, and Menden recounts this and talks about it very clearly, Judge Fletcher says in that case that ownership can be divided up and chopped up. And that's sort of why I asked the question I asked you. Because Menden certainly says some of this, and at other points it seems to say other things. But in other words, what's the limit of this? But I don't really understand why this authorization by Ms. Jones to the other right, as you say, they could go and get, say, authorization from someone else for the same photo. And why is there a, how can you call that ownership? The statute specifically says that a non-exclusive license is not ownership. Well, a non-exclusive license by itself is not ownership. That's right. How is the representative agreement non-exclusive? Well, the representation agreement is not exclusive because it's not limited to, that is the photographer did not limit to a single agency, DRK. The right to authorize, did not provide a right just to them. But importantly, and this may be your opinion, the license isn't exclusive either. The license to McGraw-Hill, in other words, you're not restricting McGraw-Hill either in the way that you are authorizing them. So that's also not exclusive. It seemed to Menden to be exclusive. Well, it is. In fact, it does limit McGraw-Hill. And it is a non-exclusive license, which just means, as Menden said, as between the licensor, in this case DRK, and McGraw, McGraw cannot be sued for the use of that image in this case. As long as it's within the license limits. But the difference is McGraw did not get the additional right to authorize others to use that image. So McGraw couldn't say to Houghton Mifflin, hey, we've got a great image. Wouldn't do it anyway, I suppose, because they're competitors. But we will license our bad image onto you. That's the critical part. Exactly. But conceptually, that's the difference between a non-exclusive license by itself. And what we have here is an ownership interest. That's what Menden says. After you get past six or seven, page six or seven, and what McGraw doesn't want to read, it says essentially a right to authorize is a 106 right. Once it becomes a 106 right and it's in the preamble to 106, then things have changed. Then you've conveyed a right under the Copyright Act under 106. That makes you an owner within a circle of ownership, for example. And as to everyone else who does not have that right, they can only use an image like McGraw, within the limits of a non-exclusive license. Here we're saying, Menden says, that now within that circle of ownership, two important things. One is that only people within the circle of ownership have rights under 106. Maybe three important things. Second, now for the first time it's been articulated that the right to authorize, as well as any other rights you get, but the right to authorize is an ownership interest. And then the third thing it says that's very important is you could chop that up. You can give that right to authorize the original owner, as Your Honor is saying, Judge Hawkins, that could then, one ownership to start, but then those rights can be divided and you can convey to as many co-owners or right under 106 as you desire. So the fact that... Menden says that. Menden does, Menden Wiley. So it says, because again, those co-owners are within that circle of ownership, and vis-a-vis the world, everybody outside that circle has no rights, unless they're granted a limited non-exclusive right like what happened here. So that's an important concept, and that's why Menden talks about sole ownership as not being a requirement anymore. And a very important thing happened in copyright. It's become the framers of the statute called the rights under 106 exclusive rights, because the ordinary connotation is that nobody else can have them, just one person. Can we focus on this assignment agreement? Yes. I'm just trying to figure out, you say that the assignment agreement renders DRK illegal when it merely assigns the bearer right to sue, which seems to be violating silver. So can you talk to me about that? Yes. We disagree with that position, this bearer right to sue, because there's an assignment of copyrights very clear and expressed. The only reason that it's been now in what we think are drive-by rulings, considered somehow that if you convey copyright title expressly in a written agreement, along with a group of claims, that somehow that only conveys a bearer right to sue, pejorative concept after silvers used many times, that somehow that's what happened here. And it didn't happen here. Judge Alsep said it happened back in the very first Minden v. Pearson case that sort of started this ball of drive-by rulings. And then Judge Vela said it, relying upon, guess what, Minden Wiley, the district court, Judge Chen. And he relied upon Judge Alsep by collateral estoppel. Let me ask you a question. You have a right, haven't you? Yes. Just to drive by a ruling, whatever you mean by that. And I understand the difference in your opinion. You have other interests in this group, copyright, not just the right to sue. But in writing, you did indicate that the appearance of a transfer of the copyright is in way itself and nothing to go behind it, correct? Correct. But neither did it say if you have an exposed transfer of copyright ownership coupled with an accrued claim, even if it's for the purpose of litigation, and there's nothing wrong with that, it's been tried to, McGraw, in this case, tries to cast that as. I didn't say that. It seemed to me it did say that. The difference here is that you also have something else that's hooked up to it. Finally, you have your own interest in this copyright, whether it's exclusive or non-exclusive. Absolutely. But also, the DRK was not set up to be a corporation to prosecute copyright claims. That's what happened in Wright-Haven. It wasn't set up to be a corporation to prosecute copyright claims. It was set up to be a corporation to authorize the use of licenses in order to implement that. In other words, they're one and the same. It's because you have this other interest. No, but Wright-Haven involved a company that was formed exactly for the purpose of just going out and buying claims, copyright infringement claims. They had no other interest in copyright. None, and no relationship. Not a relationship like we have here, where. It's the same point. So, and the question is, how does that hook up in Wright-Haven? First of all, as an interest candidate, on your end of argument, I'm going to give you two more words. This is a complicated one. Thank you. On your Minden claim, the assignment of your good copyright doesn't matter. I mean, the DRK, is that right? On your Minden claim. Minden-Wiley. Yes. It didn't matter, but it was just stopped, so it was precluded. But the court ended up saying, Minden court said, we don't have to go to that pillar. So what I'm saying is, if you prevailed on that argument, we wouldn't get into the question of whether to transfer. Correct. There are three separate ways, it's our view, that you can get standing here. One is the express conveyance of legal ownership, and there couldn't be any doubt that on the face of the agreement, the assignment agreement, there's the conveyance, the transfer of legal ownership. No, in the agency agreements. That's the problem with these. Over here we have the assignment agreement. Here we have the agency agreement. And over here we have a claim that beneficial ownership exists. So those are two separate agreements. That's why I think it's so important, the distinction between what we have here and Wright Haven. Wright Haven didn't have another agreement way before they came up with this transfer scheme, as it's called. But DRK did. DRK had the representation agreement. That... The representation agreement was presented to Wright Haven, because it didn't use the word license, it used the word lease. It didn't specifically say you have the right to authorize the issuance of licenses. But it said you have the right to lease. Yes, and we say that means the same thing, but it's not as explicit. Yes. Correct. And does that mean you have the right to authorize? Because McGraw has a license. They have a license to use a lot of images, a thousand here. But they don't have the right to authorize anybody else to use those images. They only have a defense. If we went to them and they had used the words within the license limits, they have a defense. They say, hey, we have a license. As between the licensor and licensee, that's what that non-exclusive license gives them. And that's why this is different. Because whether it's a non-exclusive license or not, remember in Minden they didn't call the representation agreement a non-exclusive license. Or, I mean, an exclusive license. They said there was exclusive agency. But the most important part of that is that there was a right to authorize that was conveyed. And then the principle that's stated, without question and necessary to the holding, is that a right to authorize is now a 106 right articulated by the circuit. For the first time, because no other circuit has addressed it, all these other cases have been district court level cases. I'm saying drive-by rulings because in Reed Elsevier v. Mutchnick about five years ago, the U.S. Supreme Court said we have 200 cases that said registration was a jurisdictional requirement. But most of them were just repeating other cases. And that changed the rule. It felt different. Second Circuit appeal was argued in February. We are still waiting for ruling. We made a motion there because this case is ahead of that case chronologically, and asked that the Second Circuit stay the briefing schedule. You're exactly right. They didn't have to do that. But we alerted them to this potential conflict. Okay, thank you. Ma'am, please. My name is Christopher Beal. I represent the employees with Royal Hill Global Education Group, a school education holding. Jennifer is on today to answer your question about what makes this, whether this is an exclusive or non-exclusive license, the representation of a human being. I understand that. That's what I was asking. I was asking whether the agreement between Royal and DRK is exclusive in the sense that Royal go off and license people. The answer is, depending on the terms of the license invoice arrangement that DRK conveyed to Royal, yes, Royal can license others. So to give you an example, McGraw-Hill purchases the right from DRK to use photos in textbooks. McGraw-Hill then licenses purchasers of those textbooks to use those photos online. And professors' PowerPoint displays it and licenses third parties to use those final photos through McGraw-Hill's transaction. So McGraw-Hill acquires an authorization to license. That's interesting. What I meant was if McGraw-Hill licenses from DRK to have 20,000 reproductions of this, could it then go to somebody else and for the same textbook get another 20,000? If the same photo is available from another agency, and many of these are. So in this scenario, DRK represents a photo. That photo is also being represented by Getty. McGraw-Hill could, didn't, but could, go to Getty and acquire an invoice for additional people. How do you think that applies to office? It stands for the proposition that in order for a photo agency to have standing, a photo agency must be an exclusive agent of the photographer. It certifies exclusive as being horizontally exclusive. I mean with the authority to authorize. And not, I mean vertically exclusive, but not horizontally exclusive. Because it says the fact that the photographer or somebody else also has that right doesn't matter. I agree that that's what it says. I think the Minden decision is in tension with the Sulphur's decision. Okay. I believe that you construe Minden to stand for the proposition that as between a photo agency and the world. If the photo agency has the exclusive right as against the world, then the photo agency has standing. Exclusively against the world, meaning that it's exclusive. Why is that not true here? Because TRK did not have exclusive representation of its photographers and that its photographers did authorize others. But Minden specifically says that because of the, that the photographer regained the right to authorize or somebody else. It said or somebody else. It did say or somebody else. The answer, Your Honor, is that under the facts in the record in the Minden case, Minden, it was uncontroverted, was an exclusive agent of the photographers. And that its exclusivity as an agent meant that it controlled, it was an owner of the rights as against the world. It indicated that, the court indicated in Minden, that the photographer and the photo agency, the fact that the photographer could engage in licensing, did not eliminate the fact that Minden was an exclusivization and therefore Minden elite exclusivity as against the world. The TRK submitted affidavits from the photographers, said affidavits that they intended to part with ownership and be copyrighted afterwards. So I guess my question for you is, why don't those affidavits create at least a triable issue of fact about the effect of the assignment agreement? The answer is, those affidavits are exactly what the Wright-Hibbon organization submitted in the Wright-Hibbon case saying that the parties intended to create a transfer of ownership on a court in Wright-Hibbon held that those assertions of intent are not dispositive nor even a fact issue. Wright-Hibbon was deciding on a summary adjustment. What the court in Wright-Hibbon said is that judges have to look to the substance and effect of the party's relationship to understand whether in fact there has been a transfer of ownership as opposed to just an intention expressed after the fact. The answer is, I can't explain that script. I don't like it. It's not what the question is like. I believe that the script is in conflict with clear congressional expression throughout the Copyright Act, which makes a fundamental distinction between exclusivity and non-exclusivity. In the definitions of ownership, exclusive licenses are indicated to be I think what this seems to be saying is that the authorization right is somewhat different because it gives you a right down the line. It's not just a right to use it yourself, but to, as against the world, control other people's rights. I understand that that loss can be read into the panel's decision in Minden. I would submit, Your Honors, that that loss is highly inconsistent with prior cases on this circuit, and that that loss is fundamentally inconsistent with right-handed silvers. Silvers in, Your Honors, Judge Hawkins' decision in Warren v. Fox Valley, and actually Your Honors' decision at the dropware level in Giddings v. the case about paintings. And you dissented in silvers, and I would submit, Your Honor, that your dissent in silvers would not save DRK here. DRK was not the creator of the photos, but that's what your dissent was suggesting, was that a creator could still have standing. And where Your Honor was coming from was that the purpose of the Copyright Act is to enable creation of content, and that it seems appropriate to allow the creator to enforce the copyright. In this context, it's not a creator who's enforcing it, it's an agent. So I'm telling you why we haven't really been talking about the transfer much. We've been talking about the post-temporary on the transfer issue. The statute specifically says that the ownership is temporary. It doesn't matter. So that can't be any more. You can't emphasize that. So why is it that makes this? DRK has some kind of an interest in this copyright in these photos, whether you call it non-exclusive or exclusive, undependent, or whatever. And so when it's getting the transfer, or the purported transfer, it does have its own interest somewhere behind there, unlike Great Havens, which has none. Well, I would beg to differ this, but unlike Great Haven, Great Haven had none. Great Haven had the power under the strategic alliance agreement with Douglas Stevens Media to enter into licenses for the purpose of settling claims. Those licenses or those settlements were licenses authorizing past use and potentially authorizing future use. And, therefore, Right Haven was exactly like DRK, and exactly in the context where there was a document that on its face suggested that there has been a transfer of ownership, and behind that document was a prior agreement. And the prior agreement controlled, and the prior agreement said, we're going to have an exclusive license back to the Review Journal, and we're going to do all these things, and we can sell claims, and we're going to divide royalties. Here's the reason why.  It didn't change the representation agreement. It didn't say, and we're not going to do licensing anymore where we provide you with proceeds from our licensing. In fact, DRK did continue to do licensing. It exceeded its invoicing with third parties as pursuant to the representation agreement, and the representation agreement was non-exclusive. And, therefore, what DRK was doing was saying, we have this assignment document. The assignment document purports to transfer ownership, but we're going to continue to behave as though the representation agreement still controls, and we're going to issue invoices, and we're going to pay royalties, and we're going to do business under the representation agreement. David, I'm sorry, why couldn't the royalties? The assignment agreement that DRK entered into with the photographers expresses only that there be a sharing of revenue from settlements. The assignment document, which is quoted in full by James Rosenblatt, says we're going to transfer ownership for the purpose of registering and pursuing claims, and if we obtain proceeds from settlement of claims, we're going to split after 30 days and cost 50-50. That's the only sharing that happens under the assignment agreement, but in fact, what was going on with DRK was they were continuing to issue invoices, licenses, and they were sharing revenue. Why were they doing that? I think we're. . . It certainly was the same 50-50, although there were a 30-60 cost, but the real problem here is DRK was the owner. The assignment agreement transferred all right and title in the copyright, which meant that DRK didn't need to share to the photographers. They were the owners. They were paying for the transfer through the opportunity to pursue litigation and the opportunity to then share the proceeds of litigation. They were paying for the transfer through invoicing licensing agreements with end users. The licensing arrangement was that if we enforce it, we'll get 50%, and that's the same thing that was in the assignment agreement. The numbers are the same. It's not the same in terms of. . . It's not the same 50% for the same thing? Well, the answer is 50% of an invoice is different from 50% of a settlement. The 50% in the invoice is still a contingent 50% contingent on the actual I don't believe it's contingent. I don't believe your Honor's confused. The answer is that what happens in the business, DRK receives a request from a publisher. The publisher wants to use a photo. The publisher says. . . DRK has for the first license, not for any infringement. That's correct. It seems that. . . . . . that DRK is beneficial more based on the financial stake that it had in these photographs. That's exactly what Judge Hawkins' decision in Warren's family, Fox Family Entertainment, held that it can't. That decision, Warren v. Fox Family Entertainment, was a situation which, like Judge Berzon's hypothetic 100%, they write to a work-for-hire author who is sharing proceeds from the work but is not an owner of the work because it was work-for-hire and therefore it wasn't an owner. The argument was made that the work-for-hire author is a beneficial owner because that person is receiving money. In the same way DRK is receiving money, the court held that that was not a beneficial owner, that the standard for beneficial ownership is someone who was an author and parts in with the ownership in exchange for receipts of revenue. DRK was never the author. Therefore, DRK cannot be the beneficial owner. Your Honors, out of time, I would only conclude by saying we believe Judge Rosenblatt was correct and that in order to hold for DRK, this court would have to set aside right-hand people. Can you talk a little bit about the practicalities? It seems to me that the Alaska case ended or being driven somewhat by the practicalities of this, which is that if you're right, then essentially is there any practical way to enforce this? In particular, is there a contract that could be enforced? Well, certainly DRK has a contract. It has the invoice of transactions that we're on now. I want to— Are there issues in enforcing copyright contracts? There is, absolutely. If the contract is merely a contract for the payment of making copies, the kind that we would argue in the Second Circuit is so-called. But I want to— Therefore, is there a way in order to enforce the copyright contract? If there has been and there was a contract between DRK and McGraw-Hill, then DRK, that is in addition to or beyond merely authorization to make copies— In a sense, what is forced are the authorization to make copies. There was an agreement in presence with DRK around tracing all terms. It was overarching for certain periods of time. I need to step back and make a point about practicalities because Your Honor is correct that in Alaska, Stock and in Minden, the panels point to practicality. First off, we don't have it in the record, but I would suggest, Your Honor, you could take traditional notice of the fact that Mr. Harmon and his firm have brought about 140, 150 of these kinds of cases. Seventy-six of them have been on behalf of individuals. It is simply not true that individuals cannot enforce their copyright. In fact, the vast majority of the cases that Mr. Harmon's firm is now bringing are individual photographers based on individual transactions across many agencies. And so it just isn't true that it is practically difficult to enforce copyright by an individual. Moreover, that's what Congress created. The registration regime that allows for excessive damages costs. If the photographer obtains a copyright registration or somebody obtains a copyright registration and the registration is in place before the infringement commences, statutory damages and attorney's fees are available. I think it's also true that according to the Copyright Office, I don't know whether you would speak challenge, there is no problem with their having to get the registration, to get the registration. The Ninth Circuit should be so helped, yes. There is a district judge in the Second Circuit who disagrees, and I was to Harmon earlier, so I'll leave it at that. We have a long history. We have a long history. Thank you very much. Thank you. Well, there's a lot of brush to clear, and I'm not sure you're going to let me do it all, but... Well, they would love that, because what's happened here in a practical sense is McGraw-Hill has saved hundreds of thousands of millions of dollars of licensing fees. So they would love nothing more than to say, we'll pay $100 or $50 or $200 for additional licensing fees under the contract. And they understand that they've been able to keep that money for years and years and years. Essentially, if they don't... Perhaps depends on the agreement, but yes, that's some of it. Say that again. There's not... Early on, McGraw and others challenged these actions and said, they're not copyright infringement cases. These are breach of contract cases. Ordinary... There would be no problem, except that the damages are tiny compared with copyright, and courts have said for a long time now, these are not contract cases. When you go beyond a license limit, it's not a breach of a contract. You have the right to use the images 40,000 times. You had to pay for that. Well, they did that. Once you go beyond the contract, new kids in other cases have said, you're in copyright infringement territory. And therefore, you can't bring in contract cases under state law. Maybe. They don't say that, but nobody wants to. Let's be real. There's even tinier damages at stake. And Mr. Beal. McGraw, you want to get to the next question? I just have one question. It seems like Rochelle is not standing in the answer at the case management conference, but your client didn't do anything to amend the complaint or to add the photographer. So I'm trying to figure out how that was diligent. Well, certainly the approach that made the most sense, as Minden says very clearly in the last page of that decision to bring these claims in one group with DRK pursuing them, we believed and still believe is the better approach to vindicate the Copyright Act and what the Copyright Act is intending to accomplish. And so you're right. Early on in the case, we got on the horse, standing horse, and stayed on it. And to this day, we think that that's appropriate. But if it wasn't, then what's wrong with permitting an amended complaint to bring in the individual photographers? We could, if we could aggregate them all. Well, one of the differences is Mr. Beal will immediately file a motion for summary judgment, saying the statute of limitations has expired. And say somehow, you know, because this case was brought to SDRK and now, you know, whatever time has elapsed. Pardon? In other words, the particular infringements you're talking about are sufficiently in the past that there would be limitations. Yes. I don't understand why you didn't. I mean, just as a matter of whether I understand why you didn't add the photographers. Because it was our view that the case that should be brought would be one case under DRK, who we believe has the right, with respect to their business arrangement and relationship with photographers, and had the assignment of the copyright title. And that that was sufficient and contrasted with the difficulty of having, in this case, I think it's close to 100 photographers, be brought individually against DRK. It's a very large case. And I just would like to say one other thing. Mr. Beal and I tried a case in Philadelphia, GHPI, another photo agency. To a jury. And that jury found that this particular textbook, actually to be absolutely correct, following the jury's decision that all 53 claims of copyright infringement were valid and assessed damages, a spell leather case, the court in post-trial motions trying to figure out damages, requested our positions and McGraw-Hill admitted to over 1,000 infringements. In that case, separate infringements. In that case, in Philadelphia. Well, guess what? One of the books that they admitted, they printed 536,000 times. Even though they had licenses for 100,000, it's the very book that DRK licensed images, all of those yellow tabs, for 100,000 copies only. So here's a great example of what they're asking this court to do. And that is to throw out what we contend is the only efficient and effective way to bring this case so that they escape liability for. That you certainly could have brought a case if we could have rounded all of them up. Not another efficient way. And that's what Minden said. The same argument came up in Minden by his firm, by Mr. Beale's firm, a different lawyer. And they contended that, you know, this is how it could have happened. Well, do they really want to have 100 cases around the country? And do they, is that what indicates the Copyright Act? And what the Copyright Act is trying to do is just to protect creative work. And does that comport with Federal Rule 1 that says that just efficient and speedy determination of cases is what we should be striving for? Thank you.
judges: Hawkins, Berzon, Murguia